## BEERS *against* BROOME.

An error apparent on the record cannot be taken advantage of, on a motion for a new trial.

*Fairfield,*
*June,*
*1822.*

Beers
*v.*
Broome.

Where land was mortgaged to *A.* and *B.*, by separate deeds, executed, delivered and recorded, on the same day ; and the question was, whether the delivery of *A.*'s deed was not prior to the delivery of *B.*'s ; it was held, that a writing signed by *A.*, while in possession under his deed, declaring that there was to be no priority, was a mere admission by him, and was subject, like a parol declaration, to be explained or contradicted.

The grantor of separate deeds to *A.* and *B.*, before they were signed or acknowledged, informed *D.*, that as soon as they were completed, he should send them to him by *P.*, and directed *D.*, on receiving them, to carry them to the town-clerk, and deliver the deed to *A.* for record five minutes before the deed to *B.*, as he intended *A.*'s deed should take effect first. *P.* brought the deeds to *D.*, and repeated to him the instructions previously given by the grantor. *D.* carried and delivered them, pursuant to such instructions, to the town-clerk ; who entered on the back of *A.*'s deed, " *Recorded, February 3d, 2 o'clock, and 5 minutes, P. M. ;*" and on the back of *B.*'s— " *Recorded, February 3d, 2 o'clock and 10 minutes, P. M.*" Held, that *D.*, in this transaction, was the agent of the grantor, and acted according to the authority delegated ; that the acts of *D.*, in delivering the deeds, and giving the directions to the town-clerk, were of the same legal effect, as if done by the grantor personally ; and that, consequently, the delivery of these deeds took place, when they were received by the town-clerk, and not before.

In such case, evidence that *P.* repeated the instructions of the grantor to *D.*, having been received ; it was held, that although the fact proved, had no positive efficacy in the delegation of authority ; and the evidence itself was incompetent ; yet as it did not detract from the power previously given, the admission of such evidence furnished no ground for granting a new trial. The entries of the town-clerk on the back of the deed, were admissible, to confirm the recollection, and corroborate the testimony, of a witness, adduced to prove the delivery.

On a bill for foreclosure, the plaintiff's grantor, who had conveyed the premises to a third person, with covenants of seisin and warranty, was held to be a competent witness to support the plaintiff's title ; as a decree in chancery taking away an equity of redemption, can be no evidence, in a court of law, and between other parties, of a breach of covenant.

A decree of foreclosure cannot affect the liability of a person, not a party to the bill, for rents and profits, depending on a question of legal title.

This was a bill in chancery to foreclose the equity of redemption in mortgaged premises.

The principal facts stated in the bill, and found by the court, were the following. On the 3rd of *February*, 1812, *Isaac Hawley* mortgaged the premises to *Truman Minor*, to secure the payment of six promissory notes, amounting to 3.143 dollars. Afterwards, on the same day, he mortgaged the same lands to *William Wright*, to secure the payment of two notes, amounting to 5,500 dollars. *Minor* and *Wright*, respectively, obtained decrees of the superior court, passed in *February,*

1813, foreclosing *Hawley* of his equity of redemption in the premises.   On the 22d of *June*, 1814, *Minor*, being in possession, mortgaged the premises, by a deed containing the usual covenants of seisin and warranty, to the plaintiff and *Philo Booth*, to secure the payment of two notes, payable to the plaintiff, for 1812 dollars, 32 cents, and of two notes, payable to *Booth*, for 719 dollars, 47 cents.   On the 6th of *May*, 1815, *Minor* again mortgaged the premises, by a similar deed, to *Elijah Terrill* and *Isaac Babbit*, to secure the payment of one note, payable to *Terrill*, for 350 dollars, and one note, payable to *Babbit*, for 478 dollars, 33 cents.   On most of these notes suits have been brought, and judgments recovered ; but they remain wholly unpaid, otherwise than by foreclosure.

In *December*, 1819, the plaintiff and *Booth* obtained a decree of foreclosure against *Wright*, *Terrill* and *Babbit* and *Minor*, limiting the time for *Wright* to redeem to the second *Monday* of *July*, 1820 ; for *Babbit* and *Terrill*, to the first *Monday* of *September*, 1820 ; and for *Minor* to the first *Monday* of *November*, 1820 ; who all failed to make payment according to the decree, and the foreclosure became absolute against them.

On the 11th of *September*, 1820, *Booth* released his right and title in the premises, and assigned his collateral securities to the plaintiff.

By a deed of release, dated the 10th of *June*, 1815, and recorded the 26th of *July*, 1815, *Wright* mortgaged the premises to the defendant, to secure the sum of 1014 dollars, 56 cents ; a fact recently discovered by the plaintiff.

The premises were stated to be of the value of 3000 dollars, and no more.

On the hearing of the cause, before *Brainard*, J., at *Danbury*, *September* term, 1821, it was proved, and found by the court, that *Minor*, on the 30th of *June*, 1812, made and delivered to *Wright* a writing, in the following words : " Whereas I received a mortgage deed of *Isaac Hawley* of certain lands and buildings therein described, dated the 3rd day of *February*, 1812 ; and *William Wright* holds a mortgage deed, given and executed by said *Hawley*, of the same lands and buildings, dated the same time and place as mentioned in my said deed ; and whereas my said deed was, by mistake, or mis-direction of the bearer of the same to the recorder, entered for record five minutes before the said *William's* deed aforesaid ; therefore, this may certify, that there is to be no priority between

*Fairfield,*
*June,*
1822.

Beers
*v.*
Broome.

the said two deeds, but they are to be considered as both standing on the same ground, and of equal dates, and no priority of date or claim in any respect. As witness my hand,

*Truman Minor.*"

" *Brookfield,* June 30th, 1812."

To rebut this writing, the court admitted parol testimony, and found the fact therein stated, not true.

It was further proved, and found by the court, that the defendant, after obtaining judgment against *Wright,* and before taking the mortgage, applied, by his agent, to the plaintiff, and enquired of him, whether *Minor's* deed was entitled to priority over that to *Wright ;* and that the plaintiff, having full knowledge of such judgment, then informed such agent, that the deeds were delivered at the same time, and that *Minor's* deed was entitled to no priority, and that *Minor* had given a writing to that effect ; whereupon the defendant took his mortgage from *Wright* on the premises, for the security of his judgment, *Wright* being a bankrupt, and having no other property by which the debt could be secured.

It was admitted, that the deed to *Minor,* and that to *Wright,* were received for record on the same day, and in a reasonable time. The defendant claimed, that there was a simultaneous delivery of them at *Brookfield.* The plaintiff claimed, that the deed to *Minor* was delivered before the deed to *Wright,* and was entitled to priority ; to prove which, he offered, with other evidence, the following entries on the back of the deeds, by the town-clerk, *viz.* on *Minor's* deed—" *Recorded, February 3rd, two o'clock and five minutes, afternoon, 1812 ;*" and on *Wright's* deed—" *Recorded, February 3rd, two o'clock and ten minutes, afternoon,* 1812." To the admission of these entries, for the purpose stated, the defendant objected ; but the court admitted them.

In further proof, that the deed to *Minor* was delivered before the deed to *Wright,* the plaintiff offered as a witness *Cyrus Dunning,* who testified, that *Hawley,* while engaged, with his counsel, on the night of his failure, in making out conveyances of his property, told *Dunning,* who lived with him, as a hired man, that he was making mortgage deeds to *Wright* and *Minor ;* and wished him to carry them, when completed, to record in *New-Milford,* and there deliver them ; that he might first go to a place specified, about two or three miles distant, and that as soon as the deeds were completed, he would send them to him, by one *Newton Platt ;* that he must

deliver, at the town-clerk's office, the deed to *Minor*, five minutes before that to *Wright*, as he intended *Minor's* should take effect first; that the witness received the deeds from the messenger, who repeated *Hawley's* instructions with regard to the delivery of them; and that the witness went forthwith to *New-Milford* records, and delivered the deeds pursuant to such instructions, when the entries of the town-clerk, before mentioned, were made thereon. To the admission of this evidence the defendant objected; but the court admitted it.

*Fairfield,*
June,
1822.

*Beers*
*v.*
*Broome.*

In the further progress of the hearing, the plaintiff offered *Minor* as a witness; to whose competency the defendant objected, on account of the writing, above recited, which he gave to *Wright*; on account of the mortgage deed, which he gave to the plaintiff and *Booth*; and on account of the mortgage deed, which he gave to *Terrill* and *Babbi*; both of which mortgage deeds contained the usual covenants of seisin and warranty; and on account of the rents and profits of the lands, which *Minor* had received, while in possession of the mortgaged premises. The plaintiff offered evidence to shew that *Minor*, had been released, by him, from all liability on his covenants, and from all claims and demands; and that he had assigned to the plaintiff all his right in the mortgaged premises, and the debt to secure which the mortgage was given. The court overruled the objection of the defendant, and admitted *Minor* as a witness.

The court found the sum of 5,082 dollars, 81 cents, due to the plaintiff, and passed a decree of foreclosure against the defendant; who moved for a rehearing, on the ground that the court, in deciding upon the points above stated, and in passing the decree, had mistaken the law.

*N. Smith* and *Staples*, in support of the motion, contended, 1. That the plaintiff was not entitled to relief, because the defendant was induced to take his mortgage from *Wright*, upon the representation of the plaintiff, that the deeds were delivered simultaneously. If this representation was true, the plaintiff has no equity. If it was, false it was a fraud upon the defendant, which will forever preclude the plaintiff, as against the defendant, from deriving any benefit from the priority of his deed. A mere concealment of facts, is, in equity, sufficient to postpone a security. *Hunsden* v. *Cheney*, 2 *Vern.* 150. *Raw* & ux. v. *Pole*, 2 *Vern.* 239. *Bac. Abr. tit.* Fraud

B. 13 *Vin. Abr.* 535. *Burrows* v. *Lock,* 10 *Ves.* jun. 470. If the plaintiff was mistaken, and made the representation innocently ; yet as he thereby induced the defendant to take security on an unsound title, he must himself sustain the loss. *Hobbs* v. *Norton,* 1 *Vern.* 136. S. C. 1 *Eq. Ca. Abr.* 356. *Teasdale* v. *Teasdale,* 2 *Eq. Ca. Abr.* 391. *Pearson* v. *Morgan,* 2 *Bro. Ch. Rep.* 384. 389.

2. That the writing given by *Minor,* while in possession, dated the 30th of *June,* 1812, acknowledging that there was no priority, was binding upon the lands charged. 5 *Bac. Abr.* 48, 9. (*Gwil. ed.*) The plaintiff could take no more than *Minor* had.

3. That the town-clerk's entries on the back of the deeds were improperly admitted as evidence of priority of delivery. The presentment of the deeds, at the town-clerk's office, for record, had no bearing upon the delivery of them as deeds. Priority of recod is not, of itself, evidence of priority of delivery. *Beers* & al. v. *Hawley* & al. 2 *Conn. Rep.* 467.

4. That the declarations of *Hawley,* made previous to the delivery of the deeds, were inadmissible. The *res gesta* was the delivery of the deeds. But these declarations, previously made, constituted no part of the delivery. *Barrett* & ux. v. *French,* 1 *Conn. Rep.* 354. 365. *Beach* v. *Catlin,* 4 *Day* 284.

5. That the testimony of *Dunning,* as to what *Newton Platt* said to him, was mere hearsay, and as such ought to have been rejected.

6. That *Minor* was an incompetent witness. First, by reason of the covenants in his deed to *Terrill* and *Babbit.* If the defendant prevails, *Minor* will be liable to *Terrill* and *Babbit* on the covenants in his deed ; but if the defendant is defeated, *Minor* will be saved harmless on those covenants ; for this decree will be evidence against him, on a writ of ejectment. Secondly, *Minor* was interested, by reason of the rents and profits, which he had received, and was accountable for. Thirdly, *Minor* had a direct interest to swell the debt due from *Hawley,* as that was the amount for the defendant to pay, and all beyond the plaintiff's debt against him went to pay his debt due to *Terrill* and *Babbit.*

7. That *Minor* was *estopped,* under the circumstances of this case, from swearing in opposition to the terms of the writing, which he had given.

*Daggett* and *Sherman*, contra, contended, 1. That the plaintiff's representation to the agent of the defendant, as to the simultaneous delivery of the deeds, did not preclude him from relief. The defendant was placed in no worse situation in consequence of that representation. His judgment was not given up, or discharged; nor was the execution stopped or delayed. He did not lay out any money, or forego any security, in consideration of taking the mortgage. In all the cases, in which a prior security has been postponed, on account of concealment or misrepresentation, the other party had, in consequence of it, contracted marriage, advanced money, or been in some way injured. But the defendant did not expect to gain any thing, by the enquiry; and he has lost nothing, by the answer.

2. That the writing given by *Minor*, furnished no ground for setting aside the decree. This was a mere declaration—an assertion of a fact—by a third person. *Beers* & al. v. *Hawley* & al. 2 *Conn. Rep.* 467. But if it were otherwise, an innocent purchaser, without notice, could not be affected by it.

3. That the entries on the back of the deeds, in connexion with the other evidence, were relevant and proper to prove priority. In the first place, it appears from all the evidence, that there was no delivery of the deeds, until they were deposited with the town-clerk. There was clearly no delivery of them, before they came into *Dunning's* hands. His instructions were to carry them to *New-Milford*, and "*there deliver them.*" It was there, that they took effect as deeds. But secondly, these entries, aside from other evidence, were admissible. There is no precise rule, determining the manner in which the delivery of a deed shall be proved. *Prima facie*, priority of entry in the town-clerk's office, is evidence of priority of delivery. It is generally true, that the deed first recorded shall prevail. *Beers* & al. v. *Hawley* & al. 2 *Conn. Rep.* 469. 472. Thirdly, these entries were admissible to confirm the recollection of the witness.

4. That the instructions of *Hawley* to *Dunning*, and also to *Newton Platt*, relating to the delivery of the deeds, were admissible. Where one man delivers a deed, through the agency of another, his instructions to the agent must necessarily precede the act of the agent, which is to perfect the delivery; but as such instructions relate to the delivery, and operate directly to effect it, they are a part of the *res gesta.*

5. That the circumstance that *Newton Platt*, a messenger

from *Hawley* with the deeds, repeated the same instructions to *Dunning,* as coming from *Hawley,* which *Dunning* had previously received from *Hawley,* was properly received in evidence, to corroborate the testimony of the witness, and shew that he was not mistaken.

6. That *Minor* was a disinterested witness. If, on the decree of foreclosure, in *December,* 1819, *Minor* or *Terrill* and *Babbit* had redeemed, then the defendant would have had a right to redeem from him or them, by paying the debt of *Hawley* only; and could hold the land against all the world. The plaintiff prays, that this same right of the defendant may be foreclosed. If it is decreed, and the defendant redeems, he can get the land, on paying the *Hawley* debt *only*, against all the world; and as the plaintiff owns that debt, he can hold the money. Therefore, *Minor,* if this decree is fulfilled, can never have any remedy, either for land or money. The land must go to the defendant, who holds under *Hawley,* the mortgagor; and the money must go to the plaintiff, who owns the debt. Here the land and money must eventually settle. Here they are settled, by this decree. *Minor's* mortgage to the plaintiff, and his mortgage to *Terrill* and *Babbit,* were *void,* as against the original morgagor, and all claiming under him, as the defendant does; for a mortgagee cannot onerate the premises, as against the mortgagor. If the defendant, therefore, redeems, there is an end of the whole business; as he will get the land; the plaintiff, the money; and each be entitled to what he gets. *Minor,* therefore, gets nothing, by the decree.

7. That the writing given by *Minor,*—the mere assertion of a fact,—did not preclude him from telling the truth, on another occasion, when he was a competent witness. There is nothing like an *estoppel* in the case.

Hosmer, Ch. J. On motion for a new trial, the court will not decide any question arising on the record. Of this description, is the objection founded on the admission of *Minor,* that the delivery of the deeds to him and *Wright* were contemporaneous. The same observation is applicable to the defendant's argument relative to the decree of the court. If the above objections are of any validity, as they are founded upon facts apparent of record, they are the proper subject of a writ of error.

Fairfield,
June,
1822.

Beers
v.
Broome.

It has been argued, that the written declaration of *Minor*, affected the title to the mortgaged premises, and estopped him from giving any opposing testimony. This remark is founded in a misconception of that instrument. In *Beers* v. *Hawley*, 2 *Conn. Rep.* 467. it was adjudged to be nothing more than an admission, and equally subject to be explained as if it had been a parol declaration. This determination precludes the necessity of further argument on this subject.

The testimony of *Dunning* and the entry on the deeds of *Minor* and *Wright*, by the town-clerk, specifying the time in which they were respectively recorded, have been the subject of distinct objections; but they are so intimately connected as only to require a joint consideration. To show that the delivery of *Minor's* deed was prior to the delivery of the deed to *Wright*, a connected train of facts is disclosed, establishing the proposition, that the deeds never went out of the grantor's possession, until by his agent, they were put into the hands of the town-clerk for record; and that then, the deed to *Minor* was delivered five minutes, anterior to the deed to *Wright*. The evidence admitted, was to the following effect. Before the above deeds were signed or acknowledged, *Hawley*, the grantor, told *Dunning*, the witness, that so soon as they were completed, he should send them to him, by one *Newton Platt*. He directed *Dunning*, on their reception, to carry them to the town-clerk, and deliver the deed given to *Minor*, for record, five minutes before the one given to *Wright*, " as he intended *Minor's* should take effect first." *Platt* brought the deeds to *Dunning*, and repeated the above instructions; upon which they were received by the witness, carried and delivered to the town-clerk, pursuant to the preceding direction; and the entries were made upon them as they now appear.

Upon this brief statement, certain inferences are indisputable. 1. That *Dunning* was appointed the agent of the grantor, and acted according to the authority delegated; and that the repetition by *Platt*, of instructions antecedently given to the witness, although it had no positive efficacy, and was incompetent evidence, did not detract from the power before communicated. 2. That the acts of *Dunning* in delivering the deeds, and giving the directions to the town-clerk, are of the same legal effect, as if they had been done by the grantor personally. 3. That consequently, the deeds remained in the grantor's

*Fairfield,*
*June,*
*1822.*

Beers
*v.*
Broome.

possession, and were not delivered, until the town-clerk received them.

The entries made by the town-clerk, were competent, in corroboration of *Dunning's* testimony, to show that he was not mistaken; and of the same relevancy, as a private *memorandum* of the witness would be, in authentication of the same facts, by establishing the correctness of his memory. The entries of the town-clerk were not admitted to prove priority of delivery, but to confirm the recollection of the witness. So soon as the deeds were put into the town-clerk's possession for record, they were delivered, and not before; and to admit testimony, in proof of the preceding facts, was proper, to show, that when the deeds commenced a valid existence, the one to *Minor* had the priority.

An objection has been made to the admission of *Minor* as a witness; but the facts, on which it was founded, are so imperfectly disclosed, that the court cannot know either the *object* or *nature* of his testimony. Admitting, for the sake of the argument, that the witness had an interest in the points mentioned; there is no statement that his evidence bore in that direction. If competent to answer any question, he ought not to be rejected generally. *Bent* v. *Baker,* 3 *Term Rep.* 35. *Smith* & al. v. *Carrington* & al. 4 *Cranch* 62.

Waiving, however, the insufficiency of the objection, as it appears on the motion, and assuming, that *Minor's* testimony related to the matter supposed, I can discern no interest in the witness.

For the sake of perspicuity, I will state the objections made, and attend to them, in the order in which they were presented.

1. It was said, that the court erred in admitting *Minor* as a witness, because he gave deeds containing covenants of seisin and warranty to the plaintiff and *Booth,* and to *Terrill* and *Babbitt.*

With respect to the supposed claim under the deed to the plaintiff and *Booth,* that is entirely out of the question; as the witness was released by the plaintiff, who holds the entire title, from all claims and demands.

It has been contended, that if *Broome* prevails, *Minor* will be liable to *Terrill* and *Babbit* on the covenants in his deed; but the ground of this assertion, it is difficult to apprehend. Is it insisted, that the title is in controversy, on a bill of foreclosure; (2 *Pow. Mort.* 1044.) and that the determination

either way, can affect the legal rights of *Minor ?* Can a decree in chancery, merely taking away an equity of redemption, be evidence to show the infraction of covenants in a court of law, and evidence in favour of a person, and against a person, who were not parties to the suit? It is unnecessary to enquire, whether *Minor* is interested in the *question ;* it is sufficient to say, that he has not the least shadow of interest in the *event.*

2. It has been insisted, that if the title of the defendant is not postponed, *Minor* will be liable for the rents and profits ; but if it is postponed, and the defendant foreclosed, he will be discharged from all liability. I ask, is this the operation of a decree of foreclosure, in favour of one person against another, who are not parties to the record? The objection is too unfounded to require discussion. The effect of the decree, is merely to extinguish the defendant's equity of redemption. It has no relevancy to the question of rents and profits, founded on *legal title ;* nor is it admissible evidence, on this point, for or against any one ; much less, for or against a person, who was no party to the suit, in which the decree was pronounced.

3. It has been contended, that *Minor* had a direct interest to enlarge the debt due from *Hawley,* which the defendant was bound to pay, if he would prevent a foreclosure ; but the proof of this position has not been established. On the contrary, *Minor* neither directly, nor remotely, derived, or could derive, any benefit from the decree.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

CHAPMAN, J. gave no opinion, having been of counsel in the cause.

New trial not to be granted.